UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD AND          )
BUZZFEED INC.              )
         Plaintiffs,       )
                              )   Civil Action No.  1:19-CV-01279-TJK
    v.                     )
                              )
DEPARTMENT OF JUSTICE,     )
ET AL.                     )
         Defendants.       )
_____)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR COURT ORDER REQUIRING DEFENDANTS TO REPROCESS RECORDS BEFORE THE NOVEMBER 3, 2020 PRESIDENTIAL ELECTION**

**INTRODUCTION**

On Thursday, October 8, 2020, Plaintiffs Jason Leopold and Buzzfeed, Inc., filed a two-page emergency motion ("Motion") in this Freedom of Information Act ("FOIA") action in which they seek preliminary injunctive relief in the form of an order requiring the government to "reprocess . . . 302s to remove all redactions or withholdings based on Exemption 1 or any discretionary exemptions like Exemption 5, by October 28, 2020."[1]  Mot. at 2, ECF No. 24. Plaintiffs base this request on certain posts President Trump made on Twitter on October 6, 2020 (the "Tweets"), that make reference to the "Declassification" of the "Russia Hoax."  *Id*. at Exh. A, ECF No. 24-1.  Plaintiffs' Motion, which fails to cite any case law or other legal authority for the relief Plaintiffs seek, should be dismissed because it is both moot and meritless.

Plaintiffs' Motion is moot because the Defendants, which include numerous Department of Justice ("DOJ") components as well as the Office of the Director of National Intelligence ("ODNI"), have not processed any 302s in this matter; thus, there are no 302s to "reprocess."  Even

---

[1] "FD-302 reports . . . [are] form[s] used by the FBI to document interviews conducted in law enforcement investigations."  *Montgomery v. Comey*, 300 F. Supp. 3d 158, 172 (D.D.C. 2018) (citations omitted).

setting this problem aside, Plaintiffs' Motion is meritless because the Tweets were not an order to DOJ to declassify the materials in this case—whether 302 reports or otherwise.  Decl. of G. Bradley Weinsheimer ¶¶ 4-5 (Oct. 13, 2020), attached hereto as Ex. A.  The Tweets do not constitute a self-executing declassification order and by their terms described events occurring in the past.  *Id.* ¶ 5.  Indeed, they provide no more authority to DOJ to declassify material than the Presidential Memorandum giving the Attorney General authority to declassify information that the President signed on May 23, 2019.[2]  *See id.* ¶ 5.  As with that memorandum, the President's Tweets do not require the declassification of any particular documents and have not resulted in the declassification of any 302 reports—or any other records—at issue in this case.  *Id.*

The Tweets also provide no basis for the Court to order Defendants to release or unredact any 302s (or any other information) that they have withheld or redacted under any discretionary FOIA exemptions.  The Tweets do not even reference such material, and they "do not require altering any redactions on any record at issue in this case, including, but not limited to, any redactions taken pursuant to discretionary FOIA exemptions."  *Id.*

Accordingly, there is no basis for the Court to order the release of classified or otherwise exempt 302 reports—or any other processed information—in this case.  Plaintiffs' Motion should be denied.

## BACKGROUND

This is a FOIA case in which Plaintiffs Jason Leopold and Buzzfeed, Inc., seek records regarding various aspects of the Mueller investigation from ODNI and the following DOJ

---

[2] *See* Memorandum on Agency Cooperation with Attorney General's Review of Intelligence Activities Relating to the 2016 Presidential Campaigns (May 23, 2019), *available at* https://www.whitehouse.gov/presidential-actions/memorandum-agency-cooperation-attorney-generals-review-intelligence-activities-relating-2016-presidential-campaigns/ (last accessed Oct. 15, 2020).

components: the Offices of the Attorney General ("OAG"), the Deputy Attorney General ("ODAG"), and the former Special Counsel ("SCO"), as well as the Federal Bureau of Investigation ("FBI"), the National Security Division ("NSD"), the Office of Legal Counsel ("OLC"), and the Office of the Inspector General ("OIG").

Plaintiffs' Complaint, *see* ECF No. 1, filed on May 2, 2019, contains allegations related to twenty-four different FOIA requests, many of which include multiple subparts, originally submitted to Defendants between 2017 and 2019. *See* Answer at Exs. A-EEE, ECF No. 15. The first half of the twenty-four requests identified in the Complaint, *see* Compl. ¶¶ 6-59, are being addressed by DOJ's Office of Information Policy ("OIP"); four others were directed to the FBI, *see id.* ¶¶ 78-83, 91-96, 101-107, and 108-113; and two requests were directed at each of the following: NSD, *see id.* ¶¶ 60-63 and 72-77; OIG, *see id.* ¶¶ 64-67 and 87-90; OLC, *see id.* ¶¶ 68-71 and 114-116; and ODNI, *see id.* ¶¶ 84-86 and 97-100. The Complaint, which quotes or paraphrases the terms of the requests, does not identify a single request as seeking "302 records" specifically, and most do not even implicate a universe of records that would include 302s. *See generally* Compl. ¶¶ 6-114.

The Parties have filed six previous Joint Status Reports (JSRs), the most recent of which was filed on September 10, 2020. *See* ECF No. 23. As the Sixth JSR demonstrates, Defendants have been steadily processing the twenty-four different requests at issue in this litigation. Some Defendants, including DOJ NSD and ODNI, have concluded processing the requests submitted to them. *See* ECF No. 23 at 9 & 12. The remainder of the Defendants, including the FBI, have been and continue to process their respective requests according to the terms of the Sixth JSR. The FBI and other Defendants in this action have withheld records in full or redacted them pursuant to numerous FOIA exemptions, including Exemption 1. *See, e.g.*, Ex. B (FBI cover

3

letter dated September 18, 2020, noting the withholding of information under Exemptions 1, 3, 5, 6, and 7(C), (D), and (E)). But, at this time, none of the Defendants have processed any 302 reports. *See* Ex. C (Declarations from representatives of FBI (¶ 6), OIG (¶¶ 2-3), OIP (¶ 9), OLC (¶ 3), and NSD (¶ 4)).[3] And, with the exception of the FBI and OIG, none of the Defendants are aware that their searches for responsive records include any 302s that remain to be processed. *See id*. (FBI Decl. ¶ 6; OIG Decl. ¶ 3; OIP Decl. ¶ 9; OLC Decl. ¶ 4; and NSD Decl. ¶ 4). The FBI and OIG have each identified a single 302 report (both components have identified the same 302) that neither component has yet processed for this litigation. *See id*. (FBI Decl. ¶ 6; OIG Decl. ¶ 3). The FBI is using its best efforts to process this 302 report this month in response to the separate but related FOIA litigation brought by the same Plaintiffs, represented by the same law firm, in which Plaintiffs have filed a nearly identical emergency motion. *See id*. (FBI Decl. ¶ 6 (citing *Buzzfeed et al. v. DOJ et al.*, No. 19-cv-1278 (D.D.C.) (Walton, J.) (the "*Buzzfeed 1278 Litigation*")). That motion has been fully briefed and oral argument on the matter occurred this morning. *See Buzzfeed 1278 Litigation*, ECF No. 103 (Order scheduling oral argument for 11:00 am on October 16, 2020).[4]

---

[3] ODNI has already processed the records responsive to the requests submitted to it in this litigation. *See* ECF No. 23 at 12. It did not refer any 302 reports to the FBI for consultation, *see* Ex. C (FBI Decl. ¶ 6), as it would have been required to do had it processed any.

[4] After the hearing this morning, Judge Walton issued the following Order: "ORDERED that, on or before October 20, 2020, at 12:00 p.m., the United States Department of Justice shall file a declaration by the President or an individual who has conferred directly with the President regarding whether the President intended to order the declassification and release without redaction of the FD-302 reports prepared by the Federal Bureau of Investigation of witness interviews from Special Counsel Robert Mueller's investigation into Russian interference in the 2016 United States presidential election. It is further ORDERED that, on October 21, 2020, at 11:30 a.m., the parties shall appear before the Court for a further motion hearing via teleconference." *Buzzfeed 1278 Litigation*, ECF No. 111.

**ARGUMENT**

**I.       Plaintiffs' Emergency Motion Is Moot and Should Be Dismissed**

The President's Tweets were posted to Twitter on the evening of October 6, 2020. On October 7, 2020, Plaintiffs' counsel brought the Tweets to undersigned counsel's attention in this case and a separate, pending FOIA matter. *See* Ex. D. Plaintiffs' counsel asked that "the government reprocess all of the records processed to date to remove any discretionary or classification exemptions," and that "the government move all of the records onto non-classified servers." *Id*. Plaintiffs' counsel asked that the government "complete the reprocessing and process 500 pages from the remaining body of records by October 28." *Id*. Plaintiffs' counsel asked for a response by the "end of the day," *id*., but ultimately agreed to allow Defendants to respond by the end of the following day, October 8, 2020. *Id*. The Defendants informed Plaintiffs' counsel that Defendants opposed the relief sought on October 8, 2020. *Id*. Plaintiffs' counsel filed its Motion later that day.

In their Motion, Plaintiffs substantially narrowed their request to the "reprocess[ing]" of "the 302s," as opposed to all records that have been processed in this litigation up to now. Mot. at 2. Had Plaintiffs' counsel informed Defendants that their focus was on processed 302 reports and had they given Defendants the time to determine whether any 302s had been processed, this motion likely could have been avoided. As it stands now, Defendants have not processed any 302s in this litigation, so there is no reprocessing to be done.[5] Consequently, Plaintiffs' Motion should be denied as moot.

---

[5] Nor are Defendants, other than DOJ OIG and the FBI, aware that 302s comprise any responsive records that remain to be processed in this litigation. As stated above, DOJ OIG and the FBI are aware of a single 302 report that remains to be processed by both, but that 302 report will be subject to Judge Walton's ruling in the *Buzzfeed 1278 Litigation*. As a matter of judicial comity, this Court should defer any decision affecting that 302 report to Judge Walton. *See Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of

## II.     Plaintiffs' Motion Is Meritless

### A.     The President's Tweets Did Not Declassify Any Information

The President has the authority to declassify documents that are otherwise currently and properly classified. *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) ("The President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U.S. Const., Art. II, § 2. His authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant."); *cf.* E.O. 13,526 § 3.1(d), 75 Fed. Reg. 707, 713 (Dec. 29, 2009) (authorizing agency officials to declassify otherwise properly classified information in the public interest on a discretionary basis). The President has not exercised this authority with respect to any specific 302 report in this case, *see* Weinsheimer Decl. ¶¶ 4–5, and obviously none that have been processed in this case since that is currently a null set. *See* Ex. C.

Plaintiffs claim that the President exercised his authority to declassify all of the information withheld from any 302 reports in this case under Exemption 1 based on the President's Tweets. *See* Mot. at 1-2. But the Tweets "were not self-executing declassification orders and do not require the declassification of any particular documents." Weinsheimer Decl. ¶ 5. Plaintiffs have pointed to no order declassifying any documents—let alone 302 reports specifically—in this case. *See generally* Mot. at 1-3. And DOJ is not aware of any such order. Weinsheimer Decl. ¶ 4.[6]

---

comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."); *see also Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 4 (D.D.C. 2011) ("[I]t is well-established in the D.C. Circuit that '[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first'" (quoting *Ragonese*, 617 F.2d at 830)).

[6] Notably, the Weinsheimer Declaration was filed in the *Buzzfeed 1278 Litigation* on October 13, 2020, *see* ECF No. 107-1, in response to Judge Walton's order requiring DOJ to "confer with the White House in order to advise the Court as to the White House's official position regarding the

The Tweets themselves do not constitute a declassification order.  At the very most, they reflect a previous authorization by the President of a declassification process related to the Russia investigation documents.  *See* Mot. at Exh. A ("I *have* fully authorized the total Declassification of any & all documents pertaining to . . . the Russia Hoax . . .") (emphasis added); *id*. ("All Russia Hoax Scandal information was Declassified by me long ago.  Unfortunately for our Country, people have acted very slowly."); *see also* Weinsheimer Decl. ¶ 5 (referring to the President's previous authorization of the Attorney General to declassify documents as part of his ongoing review of intelligence activities related to the 2016 Presidential election and certain related matters). Accordingly, the Tweets do not indicate that the President was exercising his Constitutional authority anew to declassify specific information.  *See id*.  The Tweets also did not have the usual formality or specificity of a declassification order.  Weinsheimer Decl. ¶¶ 4-5; *see also New York Times v. Cent. Intelligence Agency*, 965 F.3d 109, 122 (2d Cir. 2020) (noting that a party must show that the President's "statements are sufficiently specific," and that they "subsequently triggered actual declassification").  In contrast to the ambiguous Tweets at issue in Plaintiffs' Motion, the President has previously and much more formally and clearly declassified and disclosed information when he wished to do so.  *See, e.g.*, Letter from White House Counsel Donald McGahn to Representative Devin Nunes (Feb. 2, 2018) (explaining that the President declassified a memorandum and attaching that memorandum to the letter).[7]  Absent an unequivocal declassification order by the President or an authorized declassification by an agency official under

---

declassification and release to the public of information related to the Russia investigation."  *Buzzfeed 1278 Litigation*, ECF No. 103.  Thus, the Weinsheimer declaration is a statement advising the court "as to the White House's official position regarding the declassification and release to the public of information related to the Russia investigation."  *Id*.

[7] The letter is available at https://docs.house.gov/meetings/IG/IG00/20180129/106822/HMTG-115-IG00-20180129-SD001.pdf (last accessed Oct. 10, 2020).

the formal procedures used to declassify information pursuant to Executive Order 13,526, this Court should not infer declassification.  *See New York Times*, 965 F.3d at 122.

DOJ did not receive any similar directive to declassify any 302s or other records at issue in this case.  Weinsheimer Decl. ¶¶ 4-5.  After the President posted the Tweets, DOJ officials conferred with the White House Counsel's Office, which serves as counsel to the President in his official capacity, and were informed that there was no order requiring declassification or disclosure of any document at issue in this case.  *Id*.  "[DOJ] was further informed that the President's statements on Twitter were not self-executing declassification orders and do not require the declassification of any particular documents."  *Id*. ¶ 5.  Although as noted above, the President did previously delegate declassification authority to the Attorney General, to date, the Attorney General has not exercised that declassification authority to release any of the redacted material in this case based on the President's Tweets.  *Id*.  In sum, the Tweets are not an order to declassify any 302 reports, DOJ has never received such an order, and DOJ subsequently confirmed with the White House Counsel's Office that there was and is no order to declassify materials at issue in this case based on the Tweets, which by their terms are backwards-looking and describe past events.  *Id*. ¶¶ 4–5.

Accordingly, because DOJ has confirmed that the President's Tweets did not constitute or reflect a presidential order to declassify any specific information, the Court should not order disclosure of any information withheld under FOIA Exemption 1 in this case.  *See James Madison Project v. Dep't of Justice*, Case No. 17-cv-00597 (APM), 2020 WL 1033301, at *2 (D.D.C. Mar. 3, 2020) (concluding that, upon review of a DOJ declaration that a White House press release "did not constitute or reflect a presidential order to declassify" any materials, the Department properly withheld classified information pursuant to Exemption 1); *Poulsen v. Dep't of Def*., 373 F. Supp.

3d 1249, 1279 (N.D. Cal. 2019) ("The President's September 2018 'declassification' directive was not an 'order' from the President covering this material, just a statement from the White House asking the executive agencies to undertake a review and further justify the redactions.").

### B. The President's Tweets Did Not Waive Any Other FOIA Exemptions

Plaintiffs argue that because of the Tweets at issue here, the government should "reprocess the 302s" not only "to remove all redactions or withholdings based on Exemption 1," but also, "any discretionary exemptions like Exemption 5." Mot. at 2. The President's Tweets provide no basis for the Court to require the government to do so here given that no 302s have been processed thus far, nor do they provide a basis for the Court to require the government to do so for any of the records that actually have been processed in this matter.

The Tweets, which reference purported "declassification" of unspecified information, are entirely silent about information withheld on other grounds. *See* Mot. at Exh. A. And the White House has made clear that the Tweets "do not require the alteration of any of the redactions to any record that have already been taken, including, but not limited to, any redactions taken pursuant to any discretionary FOIA exemptions." Weinsheimer Decl. ¶ 5. "Nor do the President's statements on Twitter prevent the Department from taking appropriate exemptions and redacting documents consistent with law and the positions the Department takes in FOIA matters." *Id.* Therefore, the Tweets do not, as Plaintiffs argue, operate as a waiver of any of these exemptions.

Nor should the Court infer waiver. To take just one example, the D.C. Circuit has held that, because executive privileges such as the presidential communications privilege and deliberative process privilege exist "to aid the governmental decisionmaking process, a waiver should not be lightly inferred." *In re Sealed Case (Espy)*, 121 F.3d 729, 741 (D.C. Cir. 1997). Because the Tweets do not mention privileged information, they cannot possibly constitute any waiver at all, much less express waiver of executive privileges. *See id.*; *cf. Nixon v. Sirica*, 487

F.2d 700, 717 (D.C. 1973) (finding that an explicit statement by President Nixon that "[e]xecutive privilege will not be invoked" was insufficient to find waiver). Indeed, in an earlier decision by Judge Walton in the *Buzzfeed 1278 Litigation*, the court determined that the President's Twitter post that "he 'had the RIGHT to use [e]xecutive [p]rivilege,' but that he 'did[] n[o]t!'" was insufficient to constitute a waiver of the presidential communications privilege. *See Buzzfeed 1278 Litigation*, ECF No. 86, Mem. Op. at 17. If that statement was insufficient to constitute a waiver of Exemption 5, a statement that is entirely silent about any privileged information should not have a different result, especially given the subsequent clarification that the Tweets do not operate as a waiver of any redaction. *See* Weinsheimer Decl. ¶ 5.

Defendants, including the FBI, *see, e.g.*, Ex. B, have redacted information from various records processed in this case for other reasons as well, including, for example, to prevent the disclosure of intelligence and law enforcement information and to protect personal privacy. *Id*. These redactions reflect "legitimate governmental and private interests [that] could be harmed by release" of the underlying information. *FBI v. Abramson*, 456 U.S. 615, 621 (1982). DOJ's declaration makes clear that the Tweets did not alter any of these redactions. Weinsheimer Decl. ¶ 5. Accordingly, the Court should not order the mass disclosure of information that could harm legitimate governmental and private interests based on Tweets that are silent about this material.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

| | |
|---|---|
| Dated:  October 16, 2020 | Respectfully Submitted, |
| | JEFFREY BOSSERT CLARK<br>Acting Assistant Attorney General<br>Civil Division |
| | MARCIA BERMAN<br>Assistant Director, Federal Programs Branch |
| | /s/ *Jonathan D. Kossak* |
| | JONATHAN D. KOSSAK<br>Trial Attorney (DC Bar # 991478)<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, D.C. 20005<br>Tel. (202) 305-0612<br>Fax (202) 616-8470<br>Email:  jonathan.kossak@usdoj.gov |
| | *Counsel for Defendants* |